Go to our final case for the day, Doe v. Rocky Mountain Classical Academy, 22-1369. Good morning, Your Honors. Igor Reagan, appearing on behalf of the appellant, John Doe. And I would like to reserve three minutes for rebuttal. May it please the Court. The only standard that should have been used to evaluate the actions of the school in this case is heightened scrutiny. It was not. The lower court erred by ignoring this proper standard, endorsed by the Supreme Court on multiple occasions, and instead relied on a completely different standard. Let's take a look at just the very basic facts here. John Doe is a little boy who was attending the defendant's school, Rocky Mountain Classical Academy. While in elementary school, he wore earrings. It's a harmless habit. He was just wearing small, stud earrings, the kind that many kids like to wear. RMCA has a dress code that prohibits jewelry other than watches for boys or girls and small earrings on girls. RMCA's dress code facially discriminates against boys. Girls can wear earrings. Boys may not. His mother then contacted the school, saying that RMCA was violating, or his mom was contacted, and was told that this little boy was violating the dress code. His mother pushed back, saying that this violated rules on discrimination and equity. At that point, this little boy started getting suspended. Then he was going to get kicked out of school permanently, an expulsion. At that point, mom brought a suit. We have to look at the case law here, which is extensive and definitive. Starting with Craig v. Warren in 1976, the Supreme Court clearly indicated that classifications that distinguish between males and females are subject to scrutiny under the Equal Protection Clause. And they said in that case, intermediate scrutiny, not strict scrutiny. Correct. It is a heightened scrutiny standard, Your Honor. Right, but it's not strict scrutiny. Yes, Your Honor, I agree. The Craig Court did go further when it said classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives. Now, I don't know what important governmental objective there is to be served by preventing the five-year-old boy from wearing earrings. So what was the objective proffered in the case below? I mean, surely the school had a reason that they came up with. So, Your Honor, this is something that was discussed during the temporary injunction. But at the same time, it wasn't really a big issue during the briefing. And I think that at the motion-to-dismiss stage, what their objective is is not nearly as important. That's why we wanted to get past the motion-to-dismiss stage. And at that point, we can get into what their objectives are. We can debate that during summary judgment or during trial. Well, I mean, their argument is that we should be looking at it as a comparable burden issue, right? Whether the dress code, although not identical for boys and girls, that there are relatively equal burdens. There are many problems with this comparable burdens approach that was used by the lower court. Number one, it is an approach that was only used, actually, by a different appellate court in the Seventh Circuit. This is never something that's been adopted by the Supreme Court. The Supreme Court, both in the Cred case and in U.S. v. Virginia, has indicated, actually, that it is a heightened scrutiny standard. Never have they mentioned a comparable burden. The Price Waterhouse case, which was an employment case but still talked about these different classifications, also never mentioned comparable burdens. It all had to do with a heightened scrutiny test. In fact, even the Hayden court itself, which the appellee relied on almost exclusively in this argument, questioned its own decision. Because it wondered how much validity its own approach had in light of the Price Waterhouse v. Hopkins case. Because the cases that Hayden relied on were all pre-Price Waterhouse. They also were pre-Cred, and they were pre-United States v. Virginia. Additionally, another problem with the comparable burdens test. Actually, in that case, the plaintiffs won. The Seventh Circuit found discrimination where a heroine's policies apply only to the boys' team, with no evidence concerning the content of incomparable grooming standards applied to the girls' team. We're looking at the same thing here. We have boys who may not wear earrings, and girls who may wear earrings. So even if we used this comparable burdens test, which Hayden developed and relied on, it still would fail even under that standard. In fact, even the judge himself in this case looked at this comparable burdens test and did not apply it with great confidence. The judge wrote, It is not entirely clear just how the comparable burdens test applied in Hayden fits into the overarching intermediate scrutiny framework. I would agree with that. And that is really because the comparable burdens test doesn't fit into the framework. The general standard here developed by the Supreme Court in several cases is that it's not comparable burdens, but it's heightened scrutiny. What are the interests infringed on the students here? This is not a matter of you can still attend all the classes. You can participate in all the sports. A lot of the equal protection cases on the gender issue have to do with employment, things where you can identify what the interest is. What would you say is the interest or are the interests of the students in this case? Your Honor, the interest here is equal protection. No, no, no. It's equal protection to protect an interest. So what is the counterpart in this case to not being able to participate in a sport or deprived of a job or equal treatment of the job, burdens on the job? What is it? Freedom of expression, Your Honor. Okay. I thought you had argued in your brief that it was disparate treatment based on sex. It is disparate treatment, Your Honor, because one of the things that the lower court found over here— Well, and I thought you expressly said it wasn't. You weren't asserting a First Amendment right to freedom of expression. Maybe I read your brief wrong. It's freedom of expression within an equal protection framework. We chose not to argue something here under the First Amendment. We chose to go at it from an equal protection issue. The girls can express themselves in a way that the boys can't. That's correct, Your Honor. Now, schools—the courts have been pretty ginger about telling schools that they can't limit student expression in some ways, school papers, things like that. Does that make a difference here? This is an area of expression where schools have been recognized as having some authority in limiting expression. Would you agree with that? I would agree, Your Honor. And if the school decided that it wanted to prohibit earrings and jewelry for every student in the school, we wouldn't be here right now. That's not the problem. The school did not actually mean to limit expression for everyone. It only meant to limit expression for boys. Well, that's where the comparable limitations standard might apply. So you—girls and boys might have somewhat different limitations, but they're comparable. The school doesn't want the students—I think this is implicit in any dress code— to attract attention by dressing differently. And, in other words, limit expression so you don't create any controversy or you're not saying, look at me, I'm special. And schools can do that, can't they? Well, as long as they do it equally, Your Honor. Well, you don't think the fact that there are physical differences between boys and girls could justify some differences in how they express themselves? In other words, they're saying because we live in a society where boys and girls often dress differently and wear different types of jewelry and things like that, that you might say the underlying theme, underlying purpose is not to attract attention to yourself through your dress. They don't want kids competing that way or distracting other students that way. So they might apply some things to boys and some things to girls, but the underlying purpose is the same. And, therefore, a comparable treatment test might be a reasonable way to approach it. How do you respond to that? Well, what are the physical differences between the earlobes of children? That's what I don't understand. I can understand on certain physical differences. Let's say, for example, in an employment context, in order to become a firefighter or a police officer, there might be different strength requirements or distance requirements. But here, earlobes are earlobes. And they didn't say that girls over here could not wear earrings that, let's say, were diamond studded. That's a way of attracting attention as well. They just said no earrings, period. When we think about what the point of jewelry is, the point of jewelry in many respects is actually to draw attention to yourself. It is actually to look prettier, to look more attractive. And that's what girls are allowed to do and draw attention to themselves, but boys are not allowed to do. I would also ask the court, Your Honor, about this comparable burdens test. At what point is a comparable burden no longer comparable? Now here, in this particular case, the judge looked at these comparable burdens and said, well, many things are similar over here. But we actually have many things that are not. There are hair length requirements that are not comparable for the boys and girls. As there were in Hayden, where the plaintiffs won, by the way, there are requirements on pants and there are requirements on jewelry. Well, how incomparable does a burden have to be before it's no longer a comparable burden? There are 15 different rules and three are different. Is it no longer incomparable? Four are different. Is it no longer incomparable? Maybe it depends on the purpose. Well, that's perfectly fine, Your Honor. But that's why, actually, at the motion to dismiss stage, we should actually look at it from a Hayden-Scruby perspective. Then we can go ahead and examine the purpose. The problem is that we never actually got to that point here because we just used this comparable burdens test. I'd like to go ahead and then reserve the rest of my time, please. Good morning, Your Honor. Eric Hall, admitted to this court. I'm here on behalf of the classical academy and Colleen Powell and Nicole Block. The question presented in this appeal is what should the legal standard be for a court to decide whether public school dress codes that treat boys and girls differently violate equal protection and Title IX? The district court adopted the comparable burdens test from the Hayden in the Seventh Circuit. That decision was correct for three reasons. First, the comparable burdens test strikes the right balance between judicial deference to local schools and judicial oversight of serious constitutional violations. Second, the comparable burdens test provides a time-tested, workable framework that will offer substantial guidance in an area of law that's marked by a currently ad hoc, inconsistent approach. And third, the comparable burdens test aligns most closely with the analogous case law of this circuit, freeing a new right-of-attachment to boys' caregiving cases from the Hayden. Other than the Seventh Circuit, has anybody else adopted the comparable burdens test? Any other circuit? For employment, Your Honor, yes. Okay. For schools. For schools, it was adopted in the Harper Court, which is in Northeastern Illinois. Okay, I said circuit. Oh, no, Your Honor. Okay, and in fact, the Seventh Circuit has questioned whether it's still good law. No, I disagree. I think when you read the Hayden case, both the majority and the dissent said that it is a discrete subset of analysis with dress code cases and that it is good law, and they applied it there, both the majority and the dissent. And there was just a discussion about, given the fact that the parties had entirely ignored it, the majority noted, whether the school district had carried the comparable burdens test because they hadn't provided an entire comprehensive dress code. That was the discussion between the majority and the dissent, but I think the Seventh Circuit and Hayden absolutely adopted and applied it. Do you think Price Waterhouse calls an end to question? I do not, because if there is a case where a family believes that sex stereotyping is going on, then they can certainly discuss that. The comparable burdens test, in Hayden, the court reserved opinion on whether Price Waterhouse adjusted it, although the court certainly said that it recognized that in Jesperson and in Nichols from the Ninth Circuit that applied the comparable burdens test in an employment context that Price Waterhouse doesn't change comparable burdens because, again, there's an opportunity to say, this is a sex stereotype that's going on in this workplace as opposed to this is a dress code. Schools have, thousands of schools have thousands of dress codes. In Colorado, dress codes are required for all schools to adopt. The comparable burdens test, again, strikes the right balance because it allows schools to adopt dress codes and allows them to have dress codes that are different for boys and girls. But here, the burdens aren't comparable. I mean, the girls have a whole lot more flexibility here than the boys. The girls can wear capris, skirts, jumpers, tights, leggings, earrings, long haircuts, and the boys can't do any of those things. The district court noted there were three differences in this particular dress code. One, that boys could not wear earrings and girls could. Two, that boys could have short hair, but girls got long hair. And three, that girls could wear certain clothes. Yeah, well, it's more than one. I mean, they can wear capris, they can wear skirts, they can wear tights. I mean, I'm not sure I'd look at this and say the burdens are comparable, even if we adopted that test. So, again, I think there are two different questions there are. I think one is, what's the right test to adopt? Yes, that's the first question. That is the first question. Again, I think the comparable burdens test is the right test to adopt. And the second one is, in this particular case, were the burdens comparable? Let me ask you a question, Bob. So we're just talking about all the differences in the dress code for boys and girls. In the litigation below, was the argument about the various differences in the dress code for boys and girls, or was it primarily limited to boys could wear earrings, girls could not wear earrings, therefore, just based on that? This was decided on a motion to dismiss. And so we filed a motion to dismiss. I did on behalf of the school and said that the court should apply comparable burdens, which I think is the correct decision. And then the court should look at the two and a half year dress code and analyze for itself, does this impose comparable burdens on boys and girls? And the court found that it did, because the differences between boys and girls, to your honorable point, was not something that would limit the boys from being able to get full opportunity of the education that they were going to get RMCA. Nothing about not being able to, for instance, wear earrings or have short hair would limit their ability to gain all the benefits of an education at RMCA. And I think that was the proper analysis. Comparable burdens has the significant virtue of decades of case law so that courts can, if there are hard cases, I don't know if this is a hard case, but if there are hard cases, they can look to that case law. Yes, almost all of that is type 7 case law, but it applies the same test and same analysis, which looks at the various types of burdens on men and women in the employment context and says, was this comparable? However, in the school context, the comparable burdens test makes even more sense, because again, courts have for decades, and I say Supreme Court and this court, deferred decisions about the day-to-day operations of public schools to local educators. Go ahead and finish your sentence. Unless there's a serious constitutional issue at stake. That's not the same situations in the school. If, as I suggested, the possibility is that the differences, what's impacted on the students by these standards is their freedom of expression. And, okay, so it looks like women can express themselves more than girls can express themselves more than boys. But what is the, what is the purpose of it? And if the, if the purpose is what we were talking about before is to keep kids from drawing too much attention to themselves, then don't we have to have something in the record on that? My bottom line here is I'm concerned about deciding this case on a motion to dismiss as opposed to a summary judgment motion. Once you had some explanation by the schools of what they had in mind here and why they did this, maybe we'd be rather deferential to them. But don't we need to have some expression, some explanation by the schools of what they're at here, why they would do these things? Again, like I said with Judge McHugh, I think there are two different questions. One is, should this court adopt a conglomerate burden test? I think it should for all the reasons that I think. But then also, secondly, if you do adopt a conglomerate burden test, I think it can be applied at a motion to dismiss case or at a summary judgment case. Well, see, I would think that to measure the conglomerate burdens, you'd have to know the purpose of the burdens. And once we understood why the schools were imposing these particular constraints, then we could measure whether we think this is within the range of discretion that schools should have. And maybe it is, and maybe it isn't. But don't we need something from the schools? Do we have anything from the schools here? The record doesn't tell us what led to these particular distinctions, why the schools drew the line where they did. Do we? No, it's just on the motion to dismiss. But the dress code itself talks about the reasons for the dress code, again, to advance a good education. Again, this court could say— I mean, is that all it says? Is it conclusory to that degree? I mean, I saw it was a test, and I could look back at it. But does it say, you know, to advance a good education, this is our dress code? It doesn't have any further elaboration on the reasoning behind it? Again, the entire student handbook was in the record. The dress code is two and a half pages long. There are statements both at the top of the dress code and at the very end of the handbook that talk about the whole purpose of this handbook and the dress code is to allow the school to educate students well. Schools are in local practice. How are we going to do that? Are we going to have this particular dress code? That's not—I mean, I'm looking at the policy right now, and it's not. It's very terse, and it says, RMCA upholds a high standard of excellence. Our school uniform is no exception. Please ensure that your students are properly dressed and ready to learn when they come to school. All clothing must be properly fitting and conservative in nature. Students who choose not to be in compliance with these guidelines will be sent home for a change of clothing. Administration reserves the right to make the final judgment call on all—there's no, you know, tying it to some substantial educational interest here. I mean, that may come out, but it's not what we have in the complaint and what's attached to the complaint, which is all we can look at at this stage. Correct, Your Honor. The burdens being compared are, can students get a good education in a similar complaint context? So a girl can get a good education with earrings, but when you put the earrings on a boy, he can't learn? I mean, doesn't that have to be explored on more than what we have? Well, again, in my opinion, that's virtually a comparable burdens test, because the question is, who's making that decision? What if the policy said girls must wear skirts, boys must wear pants? And then we're into the Pelletier case, and Pelletier is a great contrast here, because I think the Fourth Circuit should have adopted a comparable burdens test, but then should have gone on and said, yeah, boys and girls were not treated comparably because the girls were required to wear skirts. Because there the burden was on engaging in extracurricular activities, and so you could see that there really is a non-comparable burden. Absolutely. With dress codes of the nature we have here, that's not obvious, and I'm a little surprised you're so resistant to just getting some information so the judge can rule and may well rule in your favor. No, I agree, Your Honor. Again, I think— Because you're saying we should just apply the comparable burdens, but we can't measure the—I don't see how you measure the comparable burdens until you know what the purposes are. I absolutely agree with the Court that you might say comparable burdens is the right test, but let's send it back so we can get more evidence. Or we might say it's not the right test, because just because you burden both people doesn't mean it's appropriate. Absolutely, Your Honor, but again, in the school context, I think it is—just like in the employment context, to say these burdens are so slight, whether boys are wearing earrings or not, whether boys have long hair or short hair, we should let educators decide that and not have federal courts get involved in making those decisions unless we're really moving into a space where courts are concerned about how girls or boys are being treated. And that's just not the test of our initiative. Are you suggesting a de minimis exception to equal protection? No, Your Honor. It's not very bad, so— Not at all. I think comparable burdens lies between rational basis and intermediate scrutiny. Well, yeah, I think—I mean, I think the test is intermediate scrutiny, and maybe you look at the comparable burdens in assessing that test, but you've got to have some—I mean, what Judge Hart keeps asking you about is when we're trying to decide whether something is a violation, we typically have to look at the interest that it's trying to advance and whether it's narrowly tailored to that interest and whether it really advances that interest, and we just don't have much at this point that explains what that interest is. And, again, the court would certainly send it back, and the district court could then get evidence on that. I'm only submitting that I think there are times when a court might say, based upon these allegations and this complaint and based upon the dress code as I'm reading it, I think motions of dismissal might be proper. Other courts might say, no, we're going to need a little more evidence to really find out what the comparison is. I think that would be appropriate, too. But I think the comparable burdens test is the right test to adopt. If they lose on comparable burdens, the next step in that analysis, as the case explains and all the cases on the site, is to then go to intermediate scrutiny and then subject the court—I mean, subject the dress code to intermediate scrutiny. But you have to get past the threshold comparable burdens test to get there. Again, I think that's the right threshold test given the ubiquitousness of dress codes throughout schools and workplaces. I see that my time is up. Thank you. Your Honors, sending it back is exactly what we want. That's why we're here. What we're saying is that this case should have never been dismissed at the motion-to-dismiss stage. Now, if it is sent back, we still have to figure out what is the right test here. Hating is not the right test. We have three big decisions on this issue, all from the Supreme Court, not from an appellate court. And those decisions are Pricewaterhouse, Craig, and U.S. v. Virginia. All of them are instructive, and all of them use the heightened scrutiny standard. Do you think—well, go ahead and finish your thought, because I have a question for you. Your Honor, we have one court here that was questioning itself on using the standard, and that's in the Seventh Circuit. And in the Fourth Circuit, actually, we have another court that rejected the standard, specifically because the Seventh Circuit ignored all of the previous Supreme Court decisions. Don't you think it's possible that in determining how to apply a heightened standard to school dress codes, we might end up analyzing, essentially, comparable burdens? If the purpose is to avoid attracting attention—I'm not sure if that's their theory behind this at all— but then if the restrictions on boys are similar, if not identical, to restrictions on girls, and they all fit within the rubric of trying to keep them from attracting attention, that looking at comparable burdens might be a reasonable way of deciding whether the heightened scrutiny is satisfied? Well, Your Honor, let's say the court believes that that is one of the things to look at under a heightened scrutiny test. That is one potential option. Now, I will say the comparable burdens test doesn't really seem like a test to me at all, because at what point do we really know when a burden is comparable or not? I'm used to tests that have numerous elements in them, three things to look at, four things to look at, or that have very definitive language in them, like the heightened scrutiny test, for example. I don't know what comparable burdens are, and really what we're running the risk of doing is leaving it up to every individual judge, based on their own information, to say whether this is comparable or whether it's not comparable. Or saying that this is close enough that we're going to defer to the schools. Okay, and there is nothing wrong with deferring to the schools. I know that we have a long history of this. Nobody is trying to disturb that, Your Honor. We still can and should defer to the schools. However, there was a Supreme Court ruling that was very instructive on this, and they told us, it is only where state action contributes on the exercise of fundamental constitutional rights or liberties that the court may interfere with its dedication to local control of education. Let's go ahead and defer to the schools as much as we like, except when they discriminate when it comes to fundamental rights, and that's exactly what we're seeing over here. Thank you. Thank you, Counsel. Thank you. Case is submitted. Counsel are excused.